IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE M. ESCAMILLA,<br><br>                Petitioner,<br><br>vs.<br><br>ANTHONY J. ANNUCCI, Acting Commissioner, New York Department of Corrections and Community Supervision,[1]<br><br>                Respondent. | No. 9:14-cv-01590-JKS<br><br>MEMORANDUM DECISION |

George M. Escamilla, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition, Escamilla was in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Great Meadow Correctional Facility. The DOCCS's inmate locator website (http://nysdoccslookup.doccs.ny.gov/, Department ID Number 96-B-2505), indicates that Escamilla reached the maximum expiration date for his sentence and was discharged on February 7, 2016. Escamilla has filed a change of address with this Court. Respondent has answered the Petition, and Escamilla has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On February 21, 1996, Escamilla was charged with first-degree rape, first-degree sexual abuse, first-degree criminal contempt, second-degree criminal possession of a forged instrument,

---

[1] Because Garofolo has been released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is substituted as Respondent. FED. R. CIV. P. 25(c).

and third-degree assault. Upon direct appeal of his conviction, the New York Appellate Division laid out the following facts underlying Escamilla's case:

> The victim in this case is a 17–year–old girl who has resided with her mother in Broome County since they came to New York from New Mexico when she was seven years old. She is the daughter of [Escamilla], who also resided in Broome County, but she had not lived with him since leaving New Mexico. On the evening of January 17, 1996, the victim drove to school to attend a special evening class. After the class she left school and was walking to the car when she was accosted by [Escamilla]. [Escamilla] asked the victim for a ride and she drove him to a building. [Escamilla] asked her to come with him and help carry some Christmas presents that he had for her brothers. The victim agreed, parked and exited the car, but as she was proceeding toward the building, she was grabbed by [Escamilla], who pushed her to the ground and committed an act of sexual intercourse with her. In addition, [Escamilla] struck her several times on the head. [Escamilla] left the scene and the victim, after vomiting, drove to her home where she told her mother that she was late because she stayed after class for additional assistance from her teacher. She then took a shower, threw away her undergarments and washed her other clothes by hand. She did not advise anyone about this incident until a few weeks later when she told two friends and, upon their urging, notified the police. When questioned by the police, [Escamilla] denied having any contact with the victim on the evening in question and stated that he was not near the school or the building where the incident allegedly occurred. Subsequently, [Escamilla] was indicted on counts of rape, sexual abuse and assault, as well as a count of criminal contempt in connection with an alleged violation of an order of protection.
>     [Escamilla] testified during the trial. On cross-examination, in addition to admitting violating two prior orders of protection, [Escamilla] conceded that on the afternoon of January 17, 1996, he had appeared in Family Court and was advised by the court that an order of protection had been issued against him and was further ordered to stay away from the victim at all times except on a supervised basis. The jury rendered a verdict convicting [Escamilla] of rape in the first degree, sexual abuse in the first degree, criminal contempt in the first degree and assault in the third degree . . . .

*People v. Escamilla*, 666 N.Y.S.2d 278, 278-79 (N.Y. App. Div. 1997).

Through counsel, Escamilla appealed his conviction, arguing that he was deprived of a fair trial because: 1) the trial court failed to give the jury an adverse inference charge due to the victim's destruction of evidence; 2) the prosecutor's cross-examination of Escamilla, which suggested that Escamilla had a propensity to commit similar crimes, warranted a mistrial rather than the admonition and limiting charge that was given; 3) the prosecutor's summation

2

wrongfully implied that Escamilla had the propensity to commit similar crimes because he had violated various protective orders; and 4) the trial court failed to properly charge the jury as to the effect of the prior violations of the protective order.  The Appellate Division unanimously affirmed the judgment against Escamilla in a reasoned decision issued on November 26, 1997.  Escamilla then filed a counseled application for leave to appeal to the New York Court of Appeals, which was summarily denied on January 14, 1998.

Proceeding *pro se*, Escamilla then moved to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10 and to set aside his sentence under § 440.20.  In those filings, he argued in relevant part that counsel was ineffective for failing to call alibi witness Wayne Gordon at trial; and 2) the evidence presented at trial was legally insufficient to sustain his conviction.  The county court denied the motions in a reasoned, unpublished opinion issued on January 10, 2010.  The court concluded that Escamilla "failed to set forth non-record facts indicating the absence of strategic or legitimate reasons for counsel's conduct in not introducing a particular witness at trial," and found his insufficiency of the evidence claim barred under CPL § 440.10(2)(c) because sufficient facts appeared on the record to review the issue and thus it should have been, but was not, raised on direct appeal.  The record does not indicate that Escamilla moved for leave to appeal that decision in the Appellate Division.

Escamilla filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on December 8, 2014.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Escamilla argues that: 1) the prosecution presented perjured testimony; 2) Escamilla was denied a fair trial because the "court reporter did

3

not facilitate [his] remembering what two ideas [he] was arguing" and his trial counsel did not present evidence in his favor and allowed the prosecutor and judge to be impartial; 3) "there was no evidence or testimony or witnesses to support the accusations against" him; and 4) "Broome County and New York State allowed the attacks upon [his] honor and reputation with no supporting evidence."

III. STANDARD OF REVIEW

The instant Petition, filed in 2014, post-dates the 1996 amendments to 28 U.S.C. § 2254 set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application

4

of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Escamilla has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a

habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

A.  Mootness

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted). Thus, a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983). "[I]f an event occurs during the course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case" as moot.

6

*United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

As previously mentioned, the record before this Court indicates that Escamilla has been released from prison. However, a petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In cases where the petitioner challenges the conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement" even if those collateral consequences "are remote and unlikely to occur." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (emphasis omitted) (quoting *Spencer*, 523 U.S. at 8). This presumption of collateral consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices, voting in state elections, and serving on a jury. *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (quoting *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)). Accordingly, because Escamilla is still subject to collateral consequences of his conviction, his Petition has not been rendered moot by his release from prison.

B.   Timeliness

Although Respondent does not address this issue, Escamilla's Petition appears untimely on its face. The AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> 
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> 
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> 
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> 
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> 
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The record indicates that Escamilla's conviction became final after the April 24, 1996, effective date of AEDPA, and therefore AEDPA's one-year time bar applies. Although Escamilla's Petition states that he was convicted on February 23, 1996,[2] prior to AEDPA's effective date, the New York Court of Appeals denied Escamilla's application for leave to appeal on January 14, 1998. His conviction became final 90 days later, when his time seeking a writ of certiorari in the United States Supreme Court expired. *See Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005). Because Escamilla's Petition was not filed until 2014, it is clear that his Petition is untimely under that bar.[3]

---

[2] Other parts of the record indicate that this was the date the prosecution filed a trial-ready notice with the court and that he was not actually convicted until October 25, 1996.

[3] Escamilla's Petition is not timely under pre-AEDPA guidelines either. The AEDPA is silent regarding the length of time that should be permitted for filing a habeas petition challenging a conviction that became final *before* the effective date of the Act. *See Ross v. Artuz*, 150 F.3d 97, 100 (2d Cir. 1998). But this circuit, along with other circuits, has held that, where a petitioner's conviction became final prior to AEDPA's effective date, the petitioner is

An untimely petition is subject to dismissal. *Day v. McDonough*, 547 U.S. 198, 201 (2006); *Jenkins v. Greene*, 630 F.3d 298, 305 (2d Cir. 2010). The statutory limitations period under the AEDPA, however, may be tolled for equitable reasons. *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner seeking equitable tolling bears the burden of establishing two elements: 1) "that he has been pursuing his rights diligently," and 2) "that some extraordinary circumstance stood in his way" and prevented timely filing. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). The determination is made on a case-by-case basis. *Holland*, 560 U.S. at 649-50. "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (citations omitted). The threshold for a petitioner to establish equitable tolling is very high. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

Here, Escamilla merely states in his Petition, as justification for the untimeliness of his Petition, that "[t]his is the first time that I had sufficient awareness to make a viable appeal." He does not, however, provide reasons as to why equitable tolling might apply. Accordingly, while this Court is not unmindful of the plight of unrepresented state prisoners in federal habeas proceedings, there are no extraordinary circumstances that warrant application of equitable tolling here.

---

allowed a one-year "grace period" from the Act's effective date to file a timely habeas petition challenging that conviction or sentence. *Id.* at 103 (calculating that "the last day for instituting the action is the anniversary date of the start of the limitations period, or April 24, 1997"). Escamilla did not file his Petition until December 8, 2014, and thus his Petition is untimely even under pre-AEDPA standards.

However, the limitations period imposed by 28 U.S.C. 2244(d) is a statute of limitations, not a jurisdictional bar to suit. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). As such, it may be waived. *Grate v. Stinson*, 224 F. Supp. 2d 496, 498 n.3 (S.D.N.Y. 2002). When responding to a pleading, Federal Rule of Civil Procedure 8 requires a party to affirmatively state affirmative defenses. FED. R. CIV. P. 8(c)(1). Although Respondent could have raised the timeliness issue in its response to the Petition, he did not do so. Consequently, Respondent waived the timeliness issue, and the Court will not dismiss the Petition solely on that ground.

C.  Exhaustion

As Respondent correctly contends, the majority of Escamilla's claims are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal.

10

*Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Here, Escamilla failed to exhaust his perjured testimony, court reporter, and ineffective assistance of counsel claims (Grounds 1 through 3). It is unclear from this record whether these unexhausted claims are based on the record. If they are based on the record, they could have been raised on direct appeal but were not; consequently, Escamilla cannot bring a motion to vacate as to such claims. N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,][a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal. . . ."). If they are based on evidence outside the record, however, they could still be brought in a motion to vacate judgment under New York Civil Procedure Law ("CPL") § 440.10 because there is no time limit or number cap on § 440.10 motions.

But even if Escamilla could still exhaust these claims in state court, the Court will not stay the Petition and allow Escamilla to return to state court to satisfy the exhaustion requirements. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001). Escamilla has not requested that this Court stay and hold his Petition in abeyance. Moreover, the Supreme Court

11

has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

Despite Escamilla's failure to exhaust his claims, this Court nonetheless may deny his claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines*, 544 U.S. at 277. Accordingly, this Court declines to dismiss these claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

D. Merits

In any event, even if Escamilla had fully exhausted his claims before the state courts, he still would not be entitled to relief on them. For the reasons discussed below, the Court denies relief on the merits of his unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). As further discussed below, the Court also denies relief on the merits of his exhausted legal sufficiency claim.

1. *Perjured testimony* (Ground 1)

Escamilla first argues that the prosecutor offered perjured testimony. A prosecutor has a duty of candor in court and an enduring obligation to pursue the truth. *See, e.g., United States v. Salameh*, 152 F.3d 88, 133 (2d Cir. 1998). "[T]he knowing use of perjured testimony involves prosecutorial misconduct and, more importantly, involves 'a corruption of the truth-seeking

12

function of the trial process.'" *United States v. Bagley*, 473 U.S. 667, 680 (1985) (citing *United States v. Agurs*, 427 U.S. 97, 104 (1976)). It is well-established that a conviction must be side aside if "(1) 'the prosecution knew, or should have known, of the perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003) (footnote omitted; quoting *Agurs*, 427 U.S. at 103).

But Escamilla cannot show that the prosecutor offered false testimony at trial, and he does not even identify the testimony that he alleges was false. Escamilla has never articulated how the prosecution had either actual or constructive knowledge that any of the witnesses' testimony was false, and indeed, has failed to establish that any testimony was actually false. Escamilla is therefore not entitled to relief on this claim.

    2.    *Court reporter claim* (Ground 2A)

In his next ground for relief, Escamilla cursorily states that "[the] court reporter did not facilitate [his] remembering what two ideas [he] was arguing." But such blanket statement does not identify the alleged defects with sufficient factual detail. "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief." *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013). Escamilla's court reporter claim therefore must fail.

    3.    *Ineffective assistance of counsel* (Ground 2B)

In the same ground for relief, Escamilla also alleges that his "attorney did not present evidence in [his] favor, and allowed [the prosecutor] to be partial and also the judge." To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must

13

show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Escamilla must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that

14

the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id*. (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Escamilla's ineffective assistance claims fail, however, even under the more favorable New York standard. Again, the claim is not sufficiently supported to warrant relief. To the extent his claim could be construed to re-raise his argument, raised to the state courts on post-conviction review, that his attorney was ineffective for failing to call the alleged alibi witness, he is not entitled to relief on that claim either. As the county court noted in denying Escamilla's § 440 motion, Escamilla presents no statement from the alleged alibi witness setting forth the

15

substance of his proposed testimony and stating that he was available to testify if called. Thus, Escamilla has failed to show that this witness would have provided Escamilla with an alibi, and therefore fails to show that trial counsel was ineffective.

    4.    *Sufficiency of the evidence* (Grounds 3 and 4)

Finally, Escamilla claims that "[t]here was no evidence or testimony or witnesses to support the accusations against" him and likewise alleges that "[t]here was no evidence, eyewitnesses, nothing to support the claims against" him. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

16

forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

As an initial matter, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005). In finding this claim unpreserved for appellate review, the trial court relied upon CPL § 440.10(2)(c), which requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record upon which to base such an appeal. The purpose of the rule set forth in CPL § 440.10(2)(c) "is to prevent CPL 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so." *People v. Cooks*, 491 N.E.2d 676, 678 (N.Y. 1986) (citations omitted). Federal courts in this Circuit have consistently held that where a state court concluded that a petitioner's claim raised in a CPL § 440.10 was procedurally barred by CPL § 440.10(2)(c), and the claim was indeed fully developed in the trial record, the petitioner has also defaulted that claim on federal

17

habeas review.  *See Sweet v. Bennett*, 353 F.3d 135, 139-41 (2d Cir. 2003); *McCall v. Rivera*, 965 F. Supp. 2d 311, 334-35 (S.D.N.Y. 2013); *Hogan v. West*, 448 F. Supp. 2d 496, 506-07 (W.D.N.Y. 2006).  Because Escamilla has failed to assert cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, his claim is procedurally defaulted from review by this Court.  *Sweet*, 353 F.3d at 141.

Moreover, Escamilla's claim fails on the merits.  Escamilla's claims are simply an attack on the credibility of the witnesses who testified against him.  But this Court must defer to the jury's credibility findings concerning any challenged testimony.  *See Bellezza v. Fischer*, Nos. 01-CV-1445, 03-MISC-0066, 2003 WL 21854749, at *15 (E.D.N.Y. Aug. 6, 2003) (holding that, on collateral review, a federal habeas court "must presume that the jury resolved any questions of credibility in favor of the prosecution") (internal quotation marks and citation omitted).  Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction.  *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).  In this case, the victim testified that Escamilla touched her breasts and vagina and engaged in sexual intercourse with her.  Although she was the sole witness to the crime, independent witnesses corroborated other portions of her testimony.  Indeed, "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979).  The testimony in this case was thus more than sufficient to support Escamilla's convictions.  Accordingly, Escamilla is not entitled to relief on his insufficiency of the evidence claim.

Escamilla also states that "Broome County and New York State allowed the attacks upon my honor and reputation with no supporting evidence."  Construing Escamilla's *pro se* petition

liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the Court may discern that Escamilla raises a vindictive prosecution claim. To prevail on a claim of vindictive prosecution, Escamilla has to show either "'actual' vindictiveness, or . . . a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999). Actual vindictiveness must be proved by "'direct' evidence, such as evidence of a statement by the prosecutor." *Id.* at 141. "A presumption of vindictiveness arises when the circumstances of the case create a 'realistic likelihood' of prosecutorial vindictiveness." *Id.* at 141. "The relevant question, therefore, is whether there is a 'realistic likelihood' that the Government acted out of a vindictive motivation, rather than a legitimate one . . . ." *Id.* "To establish an actual vindictive motive . . . the defendant must show that '(1) the prosecutor harbored genuine animus toward the defendant . . . such that the prosecutor could be considered a 'stalking horse,' and (2) [the defendant] would not have been prosecuted except for the animus.'" *United States v. Sanders*, 211 F.3d 711, 716-17 (2d Cir. 2000) (quoting *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999)).

Escamilla sets forth no evidence of actual vindictiveness here. Nor do the circumstances in this case create a presumption of vindictiveness; rather, they clearly reveal a legitimate prosecutorial motivation. Accordingly, Escamilla is not entitled for relief on this ground in any event.

## V. CONCLUSION

Escamilla is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: March 7, 2017.

                                                /s/ James K. Singleton, Jr.
                                                JAMES K. SINGLETON, JR.
                                                Senior United States District Judge